THE BLUM FOLDING PAPER BOX COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5854. Promulgated February 19, 1945.

*Alex M. Hamburg, Esq.*, for the petitioner.
*Sidney B. Gambill, Esq.*, for the respondent.

**OPINION.**

Murdock, *Judge*: The Commissioner disallowed the petitioner's applications for relief, under section 722 of the Internal Revenue Code, from excess profits taxes for the years 1941 and 1942. The only error assigned in the petition is the Commissioner's action in disallowing the applications. The matter under consideration at the moment is the respondent's motion to dismiss the procceeding. The motion raises the question of the adequacy of the applications for relief. It is alleged therein that sufficient facts to show that any relief would be proper under the statute were not stated in the applications and the information furnished therein was so meager as not to permit any determination on the merits of the claims. The argument is that practically no facts to support the claims were set forth in the applications.

the petitioner will never be permitted to prove facts except those stated in the applications, and, therefore, the proceeding should be dismissed at this time. It is suggested that the dismissal might be for lack of jurisdiction or, if that is not proper, then on the merits of the motion. The parties were fully heard on the motion and briefs were filed. The petitioner has indicated a willingness to have the proceeding stand or fall upon the merits of the motion and, perhaps more important, has failed to show that any good purpose would be served in having the proceeding go further, if the motion is meritorious.

The facts are not in dispute. The applications here in question were filed on September 15, 1943, upon the prescribed forms. Each is a claim for the refund or credit of the full amount of the excess profits tax paid. The general information called for on the first page of the application was given, but the supporting information called for in the schedules was not given. Incorporated in the applications is a statement of several grounds for the granting of relief under section 722. The statement paraphrases subparagraphs 1, 2, and 4 of section 722 (b). Subparagraph 5 is also mentioned. Relief under any one of these subparagraphs would require the use of a "constructive average base period net income" larger than "the average base period net income." The applications do not contain the necessary supporting factual statements, but contain repeated statements that the factual information to support the applications will be assembled and filed later.

The internal revenue agent in charge, after waiting five and one-half months, sent to the petitioner on February 29, 1944, a letter calling attention to the fact that the information essential to the claims for relief had not been submitted and stating that unless the information was forthcoming in proper form within 30 days. the claims would be disallowed. The petitioner on March 7, 1944, acknowledged the receipt of the letter of February 29, 1944, and requested an extension of 90 days in which to complete the claims. The revenue agent in charge, by a letter dated March 8, 1944, notified the petitioner that an extension would be granted to May 7. No further extension was ever requested, no further information was supplied, and the Commissioner mailed to the petitioner on May 23, 1944, a notice of the disallowance of the claims for the reason that the information submitted failed to establish that the tax was excessive and discriminatory and failed to establish a fair and just amount representing normal earnings to be used as constructive average base period net income.

A taxpayer can benefit under section 722 only by filing applications in accordance with regulations prescribed by the Commissioner.[1]

---

[1] Sec. 722 (d), I. R. C., as amended by Public Law No. 201, 78th Cong., 1st sess., approved Dec. 17, 1943.

Regulations promulgated prior to the disallowance of this claim [2] required that the taxpayer set forth in its application in detail each ground upon which relief was claimed and facts sufficient to apprise the Commissioner of the exact basis therefor. They further provided that the mere statement of the provisions of section 722 upon which the claim was based would not constitute a sufficient application for relief. Where it was impossible for the taxpayer to incorporate the necessary information in the original claim which had to be filed prior to September 16, 1943, [3] the regulation provided that the claim could be supplemented with the additional information "within a reasonable time" thereafter. The respondent contends that the petitioner's applications failed to comply with the foregoing requirements of the statute and the regulations.

The applications for relief here in question obviously did not comply with the statute and the regulations and did not furnish the Commissioner with sufficient information upon which he could intelligently consider the merits of the claims advanced. The petitioner does not contend to the contrary. The Commissioner has never waived any defect in the applications. Clearly, if evidence is to be limited to the facts stated in the claims, the petitioner will never get any relief through this proceeding and it should be dismissed at this time. The petitioner has advanced several contentions, however, as reasons why this Court should consider supplemental and supporting data which the petitioner now has ready and available.

The petitioner has introduced in evidence an affidavit of Henry Brout, who states that he is the managing partner of a firm of certified public accountants engaged by the petitioner to prepare and file its claims for relief under section 722 as to the years 1941 and 1942. Brout had several talks in the early part of 1944 with a revenue agent who said that he had been assigned to make an examination of the section 722 applications for relief in connection with a field audit of the income and excess profits tax returns for the year 1942. They both became familiar with the two letters sent out by the revenue agent in charge, one, dated February 29, 1944, setting a 30-day limit, and the other, dated March 7, 1944, setting a 60-day limit within which the supplemental information would have to be furnished. Brout told Basescu, at some undisclosed time prior to May 7, 1944, that the complete proof would not be ready for filing by May 7, and Basescu replied that under the circumstances he would postpone his considera-

[2] Regulations 109, sec. 30.722–5, as amended by T. D. 5264, approved May 8, 1943, relating to 1941; and Regulations 112, sec. 35.722–5, relating to years beginning after Dec. 31. 1941.

[3] The statute then in force required that the applications or claims should be filed prior to September 16, 1943. Sec. 722 (d), I. R. C., as amended by the Joint Resolution of March 31, 1943, 78th Cong., 1st sess.

tion of the applications for relief and would first work on the examination of the 1942 returns.

Brout's firm did not finish its work on the supporting data for the 722 applications until some time subsequent to May 23, 1944, when the notice of the disallowance of the claims was mailed. No additional or supplemental information was offered to the Commissioner, so far as this record shows, prior to November 15, 1944, the date of the hearing on the present motion. The petitioner says that it relied upon the statement of the revenue agent to Brout. It argues that the Commissioner should be estopped from repudiating that statement. It contended further that the Commissioner acted arbitrarily and without reason in mailing his notice of the disallowance of the claims before a reasonable time in which to furnish the additional information had elapsed. The petitioner, in its brief, seems to have changed its argument a little from what is stated above and, instead of contending that the Commissioner should have allowed additional time, it now takes the position that additional time was in fact granted, or at least the Commissioner can not be heard to say that it was not granted, and, therefore, he acted arbitrarily in issuing the notice of disallowance prior to the filing of supporting information. On one ground or the other it asks the Court to regard the supporting data which is now available as a part of the claim for relief and to allow the proceeding to go to trial on the merits.

More than eight months elapsed from the time that the petitioner filed its application until the notice of disallowance was mailed, and a year and two months elapsed before any additional or supplemental information was offered to the Commissioner. After the sixty-day extension was granted, no further extension was properly requested. If it is appropriate for us to pass upon the reasonableness of the time allowed by the Commissioner under the circumstances of this case, then our finding is that a reasonable time was allowed and the Commissioner did not act arbitrarily in sending out the notice of disallowance. Certainly "within a reasonable time" after the filing of the application on September 15, 1943, would not, under the circumstances of this case, extend to November 15, 1944.[4]

Assuming for the moment that the revenue agent had authority to extend the time, it does not appear that he did extend the time. The statement is that he would postpone his consideration of the applications for relief and would first work on the examination of the 1942 return. This falls short of an extension of time for the filing of the supplemental data in connection with the applications for relief. Furthermore, the record does not show when he completed his work

---

[4] Apparently this supplemental information had been in completed form for some time prior to November 15, 1944.

on the 1942 returns. That work may have been completed prior to the mailing of the notice of the disallowance of the applications on May 23, 1944. The taxpayer knew that all extensions had come, not from the revenue agent, but from the revenue agent in charge. Unless the revenue agent had some authority beyond the usual authority given to a revenue agent by statute and regulations, he did not have authority to bind the Commissioner in this matter. There is no showing that the revenue agent had any special authority. The Government can not be estopped by statements of its agents which are beyond the scope of their authority. *Ritter* v. *United States*, 28 Fed. (2d) 337; certiorari denied, 283 U. S. 866; *Searles Real Estate Trust*, 25 265; *Darling* v. *Commissioner*, 49 Fed. (2d) 111, affirming 19 B. T. A. B. T. A. 1115; *Ross B. Hammond, Inc.*, 36 B. T. A. 497; affd., 97 Fed. (2d) 545. See also *John D. Biggers*, 39 B. T. A. 480, 486, and cases there cited Claims can not be amended after disallowance. *Angelus Milling Co.* v. *Nunan*, 144 Fed. (2d) 469, affirming 1 T. C. 1031; certiorari granted Dec. 4, 1944; Mertens Law of Federal Income Taxation, sec. 58.19. Finally, the petitioner would be in no better position here if the statement of the revenue agent effectively extended the time for filing the supplemental data beyond May 23, 1944, when the Commissioner mailed the notice of disallowance, until the supplemental data was furnished on November 15, 1944. It would then appear that the Commissioner has not acted upon the petitioner's complete claims, amended by this data. The Tax Court has held that it has no jurisdiction to consider 722 cases until after the Commissioner has considered and acted upon the claim. *Uni-Term Stevedoring Co.*, 3 T. C. 917; *Pioneer Parachute Co.*, 4 T. C. 27.

The scheme of the statute is that applications for relief under section 722 are to be presented in full to the Commissioner, who handles them administratively and passes upon them in the first instance in an effort to settle them without suit. This means that the applications must set forth not only the grounds for relief, but also a statement of the facts which the Commissioner is to consider in support of the reasons given. Additions are made by amendments before the claim is acted upon by the Commissioner. The Tax Court merely reviews his final determination. See sec. 732 (a), I. R. C. The taxpayer may not, as here, file a superficial claim, leaving the Commissioner in ignorance of the possible factual support for the claim, and then, after the resulting disallowance, come forward for the first time with the supporting statement of facts. That information is not a part of the application and consideration of it is beyond the scope of review by the Tax Court.

Dismissal of a suit for the refund of illegally collected processing taxes has been held proper where recovery through the court proceed-

ing would have been possible only if the plaintiff were permitted to introduce evidence going quite outside the facts stated in the claim for refund. *Samara* v. *United States*, 129 Fed. (2d) 594; certiorari denied, 317 U. S. 686. The Circuit Court disagreed with the opinion of the trial court that the dismissal should be on jurisdictional grounds, but affirmed for the reason that the taxpayer could rely for recovery only on the grounds presented to or considered by the Commissioner, citing *United States* v. *Felt & Tarrant Manufacturing Co.*, 283 U. S. 269; *Weagant* v. *Bowers*, 57 Fed. (2d) 679, and other cases. The following statement from the opinion in the *Samara* case is appropriate here:

The requirement of section 903 of the statute that all evidence relied upon be clearly set forth and the similar provision in Art. 202 of the Regulations, demanding that the taxpayer "substantiate by clear and convincing evidence all of the facts necessary to establish his claim to the satisfaction of the commissioner" are obviously intended to permit administrative adjustment of the claim. This purpose will be defeated if upon resort to the court evidence of additional facts may be presented. The court proceeding is intended only as a review of the Commissioner's decision. Hence new grounds or facts in support of the claim should be submitted to the Commissioner by a timely amendment to the claim for refund. See Paul & Mertens, Law of Fed. Income Taxation § 15.22. New facts which the Commissioner has had no opportunity to pass upon cannot, in our opinion, be adduced at the trial. This is not to say that the taxpayer cannot get a fresh decision on any disputed fact which was submitted—he may call the witnesses whose statements he set forth in his claim for refund—but he cannot use facts which he failed to disclose; that is, he must not withhold part of his ammunition until the trial.

See also *Dascomb* v. *McCuen*, 73 Fed. (2d) 417; and *Ronald Press Co.* v. *Shea*, 114 Fed. (2d) 453. Cf. *Angelus Milling Co.* v. *Nunan, supra*, and *Lee Wilson & Co.* v. *Commissioner*, 123 Fed. (2d) 232. The Court of Claims in *Caldwell Sugars, Inc.* v. *United States*, 101 Ct. Cls. 395, said:

* * * As we have said, the plaintiff did not furnish to the Commissioner of Internal Revenue any evidence whatever tending to show that the tax should be refunded. If the plaintiff may, after the Commissioner's correct and inevitable rejection of its claim on the basis of the showing made to the Commissioner, present evidence to the court which it withheld from the Commissioner, and win its suit in court, the purpose of the statutory scheme requiring that claims for refund be first made to the Commissioner is frustrated. The Government would save interest if it permitted the taxpayer to sue in court without the gesture of filing with the Commissioner an unsupported claim calling for rejection. The obvious purpose of the statutory requirement of filing claims for refund with the Commissioner as a condition precedent to suit is to "afford an opportunity for administrative adjustment without suit." *Samara* v. *United States*, 2 Cir. 129 F. 2d, 594. No such opportunity was afforded by what the plaintiff filed with the Commissioner, and the condition precedent was not fulfilled. The plaintiff may not, therefore, recover even that portion of the tax which is shown, by its evidence here presented, not to have been owed by it.

The following is from the opinion of the Circuit Court in *Angelus Milling Co.* v. *Nunan, supra:*

There is therefore no distinction between the excuse of "estoppel" and any other excuse for delay in correcting a claim after rejection. A taxpayer who files a claim which does not conform with the statute, takes his chances that in the end the Commissioner may reject it, no matter how complaisant he may appear to be. The best he can hope is to amend before rejection; and indeed even before that occurs, he may not substitute a completely different claim. *United States* v. *Henry Prentiss & Co.*, 288 U. S. 73, 53 S. Ct. 283, 77 L. Ed. 626; *United States* v. *Andrews*, 302 U. S. 517, 58 S. Ct. 315, 82 L. Ed. 398; *United States* v. *Garbutt Oil Co.*, 302 U. S. 528, 58 S. Ct. 320, 82 L. Ed. 405. This doctrine that no amendment may be too divergent helps to confirm the doctrine that rejection puts an end to all amendments, on which we are relying here.

The statute and regulations applicable to the filing and disposition of applications for relief under 722 add up to similarity with those pertaining to the refund of processing and other taxes. The petitioner's applications for relief under section 722 are in fact claims for refund of the entire excess profits taxes which it paid for the years 1940 and 1941. The purpose of review by the Tax Court and the necessity for having the claims handled administratively by the Commissioner, with the possibility of adjusting the claims in that way, is the same here as in the other cases. Obviously it is not necessary to decide, and we do not decide in this case, many of the points that were involved in the cited cases. But the Tax Court, following the principles established in those cases, will not consider for the purpose of this case the supplemental data submitted for the first time on November 15, 1944, in support of the skeleton claim filed on September 15, 1943.

The petitioner says that dismissal of this proceeding would have the effect of foreclosing consideration of its claims on the merits and of imparting finality to the administrative act of the Commissioner. If this is so, it is only because the petitioner failed to fulfill the conditions precedent to obtaining a determination on the merits. Furthermore, the dismissal of the proceeding in its present form may not preclude the petitioner from ultimately obtaining a determination on the merits as to its right to relief. Congress amended section 722 (d) by Public Law No. 201, 78th Cong., 1st sess., approved Dec. 17, 1943, after the petitioner's applications had been filed, and thereby extended the period of time for making application for relief so that it would be co-extensive with the period prescribed by section 322 for making claim for credit or refund. The amendment is expressly applicable to all taxable years beginning after December 31, 1939. Regulations 109 and 112 have been amended to reflect the change by T. D. 5393 approved July 21, 1944, I. R. B. 1944–15, p. 23. The former provisions for perfecting applications within a reasonable time after filing have

been eliminated and the amended regulations provide that no new grounds presented "after the period of time  *  *  *  prescribed by section 322 will be considered." It has been held that the rejection of a defective claim for refund does not preclude the filing of a new claim, complying with the requirements, where the second claim is filed within the period of limitations. *First National Pictures, Inc.* v. *United States*, 32 Fed. Supp. 138. See also *Untermyer* v. *Bowers*, 79 Fed. (2d) 9; *18th Street Leader Stores, Inc.* v. *United States*, 142 Fed. (2d) 113; certiorari denied Oct. 9, 1944; Mertens, Law of Federal Income Taxation, sec. 58.24; L. O. 1116, C. B. III-1, p. 350. The taxable years here involved are 1941 and 1942, and the time for making claim for refund with respect to those years would not ordinarily expire until March 15, 1945, and March 15, 1946. Of course, we do not decide whether or not this petitioner has the right to file new applications. That question is not here.

The court in the *Samara* case, *supra*, held "that dismissal of the complaint was right, but it should go upon the merits rather than lack of jurisdiction." Compare our action and the action of the appellate court in the *Angelus Milling Co.* case, *supra*. It is clear here that the petitioner can never get relief in this Court in the present proceeding because it will never be able to prove facts sufficient to support its claim and, therefore, the proceeding should be dismissed at this time. An order to that effect will be entered.

Reviewed by the Court.