TRUNZ, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11066.   Promulgated August 9, 1950.

*Percy W. Phillips, Esq.*, for the petitioner.
*Thomas R. Wickersham* and *Aaron Resnik, Esq.*, for the respondent.

**OPINION.**

Murdock, *Judge:* The net income of the petitioner for the base period years was lower than that for a number of earlier years, but that fact alone would not entitle it to relief under section 722. Cf. *George Kemp Real Estate Co.*, 12 T. C. 943. It must show, *inter alia*, that its average base period net income is an inadequate standard of normal earnings because of one or more of the factors set forth in those paragraphs of section 722 (b) mentioned in its application for relief. The position of the petitioner is that its business operated normally until the latter part of 1933 at which time a period of general economic depression reached its low point; the Government then imposed a tax on the processing of hogs, slaughtered a number of hogs, and took steps to reduce the production of hogs; severe droughts occurred in the hog-producing areas in 1934 and 1936; the cumulative effect of those events was to decrease the supply of hogs below normal, increase the price of pork, especially in relation to beef, and reduce the consumption of pork; the profits of the petitioner declined because of those events; and the income of the petitioner for none of the base period years had returned to normal, although conditions were rapidly improving, especially during the latter part of the base period years.

The petitioner must relate those events to its own net income for the base period years, that is, it must show, *inter alia*, that its average base period net income is an inadequate standard of normal earnings *because* of one or more of the factors mentioned in those paragraphs of section 722 (b) relied upon in its application for relief. It has mentioned paragraphs (1), (2), (3), and (5) of section 722 (b) in its application, but paragraph (2) seems to be the one which most nearly fits its claim, *to wit*, that its average base period net income is an inadequate standard of normal earnings because its business "was depressed in the base period because of temporary economic circumstances unusual" in its case. It argues that the requisite showing is made by statistics, tables and other evidence introduced in the record. It would go back for normal years to its earnings for the years 1928 through 1933 in order to compute therefrom constructive average base period net income of $275,000.

The evidence does not bear out the petitioner's contention that the cumulative effect of the depression, the Government interference, and the droughts, was to decrease the petitioner's supply of hogs below normal, to reduce the consumption of pork by the petitioner's customers below normal, and to reduce the profits of the petitioner for the base period years as a whole. Furthermore, the evidence to support the petitioner's contention that its low profits for all of those years were due to an increase in the price of pork is not conclusive. This is so regardless of what the general conditions in the industry may have been. The average number of hogs used by the petitioner during the base period years exceeds the average number used in the period 1928 through 1933 and certainly was not below normal. Likewise, the average annual dressed weight used in the base period was not below normal for the experience of the petitioner. The gross sales for the base period years were higher than those for any prior period of four or more consecutive years. The average cost per pound for the base period years was below normal if the three unusually low years, 1932, 1933, and 1934, might be disregarded as subnormal. The average total cost of hogs purchased by the petitioner for the base period years was higher than for corresponding prior periods, but that was due in part to increased quantities purchased, and a large part of the difference is offset by increased gross sales, with the result that gross profits of the petitioner for the base period years were about normal. Those gross profits were somewhat less than those for 1928–1933 but the difference is due mostly to 1931 and 1932, the two highest years in the entire history of the petitioner. It is not at all clear that its gross profits for the base period years were below normal because of an increase in the price of pork.

It is not necessary to determine at this time exactly why the earnings of the petitioner for the base period years were lower than they had been for earlier years provided it was not due to the circumstances and events mentioned by the petitioner in its application for relief. Nevertheless, the record shows that net profits for the base period years were lower than those for earlier years because increased expenses, such as shipping and delivery costs, selling expenses and general and administrative expenses, had to be subtracted from fairly normal gross profits. These increased expenses might have been due to the advance in wages, reduction in hours, or other changes which may have taken place during that period. It does not appear, and the petitioner has not attempted to show, that the increase in any of those expenses was due to the depression, the interference of the Government in the pork industry, or droughts. A careful study of the entire record fails to reveal that the average base period net income of the petitioner is an inadequate standard of normal earnings because

of any of the circumstances, events or factors described in section 722 (b) (1), (2), (3), or (5).

Furthermore, the evidence shows affirmatively that the petitioner is not entitled to any relief under section 722, even if it qualified for that relief under some provision of section 722 (b) because of conditions in the early years of the base period. The evidence refutes the petitioner's contention that the effect of the depression, the Government interference and the droughts had not worn off completely prior to the beginning of 1939 and that 1939 was a year below normal. The petitioner has received a substantial benefit under section 713 (f) due to the fact that the Commissioner has used the excess profits net income for 1939, in lieu of average base period net income, in computing the excess profits credit. If the increase in the cost of hogs was the cause of the decrease in net profits for some of the years of the base period, still there would be no relief under section 722 unless the constructive average base period net income exceeds the excess profits net income for 1939. *Homer Laughlin China Co.*, 7 T. C. 1325; *Irwin B. Schwabe Co.*, 12 T. C. 606. The number of hogs used, the dressed weight figures, gross sales, and the gross profits for 1938 were above normal. The average cost per pound was below normal. The petitioner's supply of hogs was not below normal at the beginning of 1939. Its sales were high. The costs of pork were certainly not above normal. The number of hogs used in 1939 and the dressed weight were above normal. The gross sales and gross profits were normal or above normal, and the average cost per pound was below normal. The record does not show that the net income for 1939 was in any way affected by the depression, by the Government interference, or by the droughts to which the petitioner has referred. Consequently, if the constructive average base period net income of the petitioner were to be determined under section 722, it certainly would not exceed the excess profits net income for 1939 and the petitioner would not be entitled to any greater relief under section 722 than it has received under section 713 (f).

Consideration of a number of other differences which the parties have argued in their briefs, including the question of whether the Court can take judicial notice of droughts, of whether legislation is a temporary economic circumstance, and the question of how the constructive average base period net income should be determined, becomes unnecessary in view of the conclusion just reached. However, it seems appropriate at this time to mention that *Blum Folding Paper Box Company*, 4 T. C. 795, is not authority for some of the principles for which the Commissioner cites it. It was held in that case that this Court will not consider *facts* which were not set forth in the application or applications for relief. The Court did not hold that evidence

to support facts stated in the applications would have to be the same as that presented to the Commissioner or that the taxpayer would have to set forth in its application the evidence upon which it relied to establish facts stated therein, and it did not say anything about methods of computing constructive average base period net income or restrict the taxpayer as to theories relating to that question.

Reviewed by Special Division.

*Decision will be entered for the respondent.*