LOCKHART CREAMERY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 27237. Promulgated January 8, 1952.

*Lee I. Park, Esq., K. Martin Worthy, Esq.,* and *Felix T. Terry, C. P. A.,* for the petitioner.

*Irene F. Scott, Esq.,* for the respondent.

1128

OPINION.

BLACK, *Judge:* Three issues are presented in this proceeding relating to petitioner's excess profits tax liability for the taxable years 1942, 1943, 1944, and 1945: (1) Is petitioner entitled to relief from excess profits tax under the provisions of section 722 (b) (4) of the Code for the milk plant acquired on January 1, 1938, and if so, in what amount; (2) was petitioner committed prior to January 1, 1940, to erect an ice cream plant which was constructed in 1941, and if so, what amount of relief is to be allowed therefor under the provisions of section 722 (b) (4) of the Code; and (3) whether petitioner is to be denied, because of its failure to claim it, the benefit of a constructive unused excess profits credit carry-over to the year 1942, resulting from a constructive unused excess profits credit in the years 1940 and 1941.

### *Issue 1: Milk Plant—Section 722 (b) (4) Relief.*

Respondent's determination that petitioner's acquisition of the milk plant was a "change in the character of the business" is well corroborated by the evidence.

Petitioner's average base period net income as computed under section 713 (e) was $24,192.51, and as computed under the "growth formula provisions" of section 713 (f) petitioner's average base period net income was $38,549.98. The excess profits tax shall be considered excessive and discriminatory if the taxpayer's average base period net income as computed under section 713 of the Code is an inadequate standard of normal earnings because of the existence of factors

enumerated in section 722 (b) (4) of the Code. See *East Texas Motor Freight Lines*, 7 T. C. 579, 587–588. The milk plant was operated by petitioner during the last 24 months of its base period. Under the provisions of section 713 (f) petitioner's average base period net income was larger than under section 713 (e), this being due in part because of the earnings from the milk plant during 1938 and 1939. The facts presented by petitioner established that the business of the milk plant showed a steady growth during the 24 months, and they further established that the earnings of petitioner did not reach by the end of the base period the level they would have reached if petitioner had made the change in the character of its business 2 years before January 1, 1938. Since petitioner has satisfied all the requirements of section 722 (b) (4) of the Code, the milk plant business of petitioner shall be deemed to have commenced on January 1, 1936, for the purpose of reconstruction.

We shall next consider whether petitioner has established what a fair and just amount representing normal earnings to be used as a constructive average base period net income would be. The deficiency notice computation, the petition and our opinion all use the same index for reconstructing earnings for the base years 1936, 1937, and 1938, but there are certain differences between the parties in the reconstruction of milk plant earnings for the calendar year 1939.

Petitioner contends in its brief that had it made such changes in the character of its business 2 years earlier its total earnings (exclusive of any consideration of the ice cream plant) would have reached a level of at least $58,838.21 at the end of the year 1939, while respondent determined an earnings level of $37,023.02 would have been attained at that time.

Petitioner contends that at the end of 1939, its reconstructed sales would have reached an annual level of 850,000 gallons (as computed on the basis of gallons purchased), or additional sales amounting to 429,817 gallons. Respondent determined for the year 1939 additional sales of 142,993 gallons as computed on the basis of gallons purchased. We have determined that additional sales as computed on the basis of gallons purchased would have been 181,101 gallons, and as computed on the "point" system additional sales of 200,000 gallons. Under the gallons purchased method the selling price is 46.14 cents per gallon, and under the point system the selling price is .4178 per gallon. In either case additional gross sales in dollars amount to $83,560.

Petitioner's selling and administrative expenses for the year 1939 were 20.625 per cent of sales and in our reconstruction, we used the same ratio. Petitioner contends that additional officers' salaries based on total sales of 850,000 gallons would have been not more than $5,000,

while respondent determined additional officers' salaries of $10,000 on additional sales of 142,993 gallons. After a consideration of the evidence, we have concluded that additional officers' salaries where the sales and income were the amounts contained in our reconstruction would be $5,000.

We have determined that petitioner's constructive average base period net income on account of its milk plant is $38,963.95. See our Findings of Fact under the heading "Milk Plant."

### Issue 2—Ice Cream Plant—Section 722 (b) (4) Relief.

Respondent determined that petitioner was committed before January 1, 1940, to a course of action of erecting an ice cream plant in Austin, Texas, and relief was granted to petitioner. The relief granted was to "Add Constructive Credit for Ice Cream Plant Commitment, $10,600.00." In his amended answer to the petition, respondent contends that he erred in granting any such relief as petitioner was not in fact so committed. The actual construction of the ice cream plant was done between February 1941 and November 1941.

The Internal Revenue Code does not define "committed,"[1] but the respondent has set forth in some detail the "course of action" necessary to qualify as a commitment. The Treasury Department Bulletin on Section 722 (November 1944) at pages 58 and 59 discusses the tests to be satisfied. This is somewhat lengthy and we shall not copy it here. It is sufficient to say that we think petitioner's evidence brings petitioner within these requirements with respect to its commitment to construct a new and improved ice cream plant in Austin.

Whether petitioner was committed to a course of action within the meaning of section 722 (b) (4) is a question of fact to be decided from the evidence which is to be interpreted in accordance with the prescribed regulations. In allowing a constructive credit to petitioner for earnings deemed to have been received from the ice cream plant, respondent thereby determined that petitioner was in fact committed to this course of action. Petitioner herein did more than acquire a lot and the evidence corroborates the respondent's determination. We have found, therefore, that prior to January 1, 1940,

[1] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

(b) * * *

(4) * * * Any change in the capacity for production or operation of the business consummated during any taxable year ending after December 31, 1939, as a result of a *course of action* to which the taxpayer *was committed* prior to January 1, 1940, * * * shall be deemed to be a change on December 31, 1939, in the character of the business, * * * [Emphasis added.]

petitioner had committed itself to a course of action looking to the erection of an ice cream plant in ·Austin. Respondent's contention in his amended answer that he erred in granting petitioner a constructive credit of $10,600 for "Constructive Credit for Ice Cream Plant Commitment" is not sustained.

Petitioner has also introduced sufficient evidence to establish a fair and just amount representing normal earnings to be used as a constructive average base period net income for ice cream plant commitment. We have determined it to be $17,515.58 and explanation is given in our Findings of Fact as to how we arrived at that figure. It need not be repeated here.

*Summary: Issues 1 and 2.*

In our Findings of Fact we determined that petitioner's constructive average base period net income is $56,479.53 which is composed of $38,963.95 due to the milk plant and $17,515.58 due to the ice cream plant commitment. In a computation under Rule 50, $56,479.53 should be used as petitioner's constructive average base period net income.

*Issue 3—1942 Carry-Over Credit from 1940 and 1941.*

The Internal Revenue Code, section 710 (b), authorizes a taxpayer to reduce "excess profits net income" by three credits, one of them being the "unused excess profits credit." On its 1942 excess profits tax return petitioner computed an "unused excess profits credit carryover" of $7,474.36 in accordance with section 710 (c) (3) (B) of the Code and this credit was used by petitioner. The credit, $5,552.78 carry-over from 1940 and $1,921.58 carry-over from 1941, was computed without consideration of a constructive average base period net income based on section 722. The granting of relief to petitioner under section 722 based upon the acquisition of the milk plant will increase petitioner's unused excess profits credits for the years 1940 and 1941, and petitioner is entitled to the benefit of the increase in unused credits in computing its excess profits tax liability for the year 1942, provided petitioner properly claimed the credits for the year 1942.

In respondent's computation of petitioner's excess profits tax liability for 1942 which was attached to the notice of deficiency, a carry-over credit of $7,474.36 was used. (Same as petitioner claimed on its return.) Respondent further stated in the notice that:

Although timely claims were filed on Form 991 for the years 1940 and 1941, there was no excess profits tax liability for either year. The benefits of a constructive credit carry-over from such years was not claimed in the 1942 application. Accordingly, the Excess Profits Tax Council made no determina-

tion as to the years 1940 and 1941 and no constructive credit carry-over is being allowed. For a computation of the $7,474.36 excess profits credit carry-over allowed herein, see the 1942 return as filed.

In connection with its claim for relief from excess profits tax for the calendar year 1942, petitioner timely filed Forms 991 and 843. For the year 1942, petitioner's adjusted excess profits net income computed without regard to section 722 was $41,583.37, and a constructive average base period net income of $196,214.20 was claimed in the application for relief. Even considering the 10 per cent reduction and 20 per cent reduction as provided in subchapter E of the Code, the constructive average base period net income claimed for the year 1942 was sufficiently large so that petitioner would owe no excess profits tax for the year 1942. Constructive credits carry-overs from 1940 and 1941, therefore, were not needed to reduce petitioner's excess profits tax liability to zero. In its brief, however, petitioner computed a constructive average base period net income of only $70,043.39 based upon a much more realistic estimate arrived at after a more careful consideration of the facts. Had the smaller and not quite so exaggerated estimates been used by petitioner in its claim for relief, perhaps petitioner would have recognized the importance of setting forth in no uncertain terms its claim for the carry-over credits.

In order for a taxpayer to be entitled to the relief provisions of section 722 of the Code it must comply with section 722 (d) as set forth in the margin.[2] Congress did not attempt in enacting section 722 to enumerate the requirements in connection with the taxpayer's application for relief, but the statute did authorize the Commissioner with the approval of the Secretary of the Treasury to do so. In compliance with the Code provision, the requirements of an application for relief were set forth in section 35.722–5 (a), as amended, of Regulations 112, the pertinent portion appears in the margin.[3] See T. D. 5393, 1944 C. B. 415, at 421.

---

[2] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

\*     \*     \*     \*     \*     \*     \*

(d) APPLICATION FOR RELIEF UNDER THIS SECTION.—\*   \*   \*   The benefits of this section shall not be allowed unless the taxpayer within the period of time prescribed by section 322 and subject to the limitation as to amount of credit or refund prescribed in such section makes application therefor in accordance with regulations prescribed by the Commissioner with the approval of the Secretary. If a constructive average base period net income has been determined under the provisions of this section for any taxable year, the Commissioner may, by regulations approved by the Secretary, prescribe the extent to which the limitations prescribed by this subsection may be waived for the purpose of determining the tax under this subchapter for a subsequent taxable year.

[3] \*   \*   \*   If an application on Form 991 (revised January, 1943) for the benefits of section 722 has been filed with respect to any taxable year, or if the filing of such application is unnecessary under (d) of this section, and if the excess profits credit based upon a constructive average base period net income determined for such taxable year produces an unused excess profits credit for such year, to obtain the benefits of such unused excess

By filing applications for relief and claims for the years 1940 and 1941, though petitioner clearly had no excess profits tax liability for those years, the regulations in respect to unused excess profits credits were in part complied with by petitioner. Moreover, in its application Form 991 for the year 1942, petitioner did refer to its application for the year 1940 for data supporting its application for the year 1942. But petitioner does not deny that it did not claim in its application for 1942 carry-over credits from the years 1940 and 1941. In this respect petitioner's application for relief in 1942 does not comply with the applicable provisions prescribed by the regulations.

The computation of an unused excess profits credit, like the net operating loss deduction, is by its own nature quite complicated and particularly is this so when the credit is to be increased by reason of section 722 relief. We are persuaded that for administrative reasons the formal and detailed requirements which here deny petitioner any excess profits credit carry-over based on section 722 relief for the years 1940 and 1941, were correctly prescribed by the Commissioner. When the validity of regulations pertinent here is considered in view of the language of the Supreme Court in *Angelus Milling Co.* v. *Commissioner*, 325 U. S. 895, we are further convinced that the regulations were lawfully prescribed in accordance with authority previously granted by Congress. Cf. *Blum Folding Paper Box Co.*, 4 T. C. 795.

In the recent case of *Packer Publishing Co.*, 17 T. C. 882, we had occasion to consider the adequacy of another claim for an unused constructive excess profit credit. After considering that application we held that the taxpayer was entitled to a credit arising from relief granted in prior years, because there was attached to its application for the taxable year 1944, a recomputation of excess profits tax wherein the taxpayer "took account of an unused excess profit credit * * * in an amount equal to the unused excess profit credit carry-over from 1942 shown in its application for relief for 1943." We held that this was sufficient notice to respondent of taxpayer's claim for an unused excess profits credit arising out of constructive relief claimed for prior years.

Petitioner in the instant proceeding made no such tax computation in its application for relief, nor did petitioner in any other way claim

profits credit as an unused profits credit carry-over or carry-back the taxpayer should file an application upon Form 991 (revised January, 1943), or an amendment to such application if already filed, for the taxable year to which such unused excess profits credit carry-over or carry-back is to be applied.

Such application or amendment should be filed within the period of time prescribed by section 322 for the filing of a claim for credit or refund for the taxable year to which the carry-over or carry-back is to be applied. In addition to all other information required, such application or amendment should incorporate by reference the data and information submitted in support of the application filed for the taxable year for which the unused excess profits credit arose, *and in addition should claim the benefit of the unused excess profits credit carry-over or carry-back.* * * * [Emphasis added.]

an increased credit by reason of section 722 relief claimed for prior years. Petitioner's application was entirely silent on that subject. As to this issue the Commissioner is sustained.

Reviewed by the Special Division.

*Decision will be entered under Rule 50.*