OPINION. Hill, Judge: Because petitioner was not organized until after December 31, 1939, under Internal Revenue Code, sections 712 and 714, it was required to compute its excess profits tax credits based on invested capital. It is now seeking a higher excess profits credit based on a constructive average base period net income under the provisions of the Code, sections 722 (c) (1),722 (c) (3) and 722 (a). Petitioner’s claims for relief make no reference to a claim under section 722 (c) (1), nor is there a showing of any waiver by the respondent which might eliminate the necessity for an explicit claim under this section. No issue with respect to section 722 (c) (1) is therefore properly before the Court. Angelus Milling Co. v. Commissioner,, 325 U. S. 293; Blum Folding Paper Box Co., 4 T. C. 795; Hummel & Downing Co., 19 T. C. 61. Petitioner’s case must, therefore, be considered only under section 722 (c) (3), which by its terms incorporates section 722 (a). That section (722 (c) (3)) provides that the tax on a taxpayer in petitioner’s position shall be considered excessive and discriminatory “if the excess profits credit based on invested capital is an inadequate standard for determining excess profits because * * * (3) the invested capital of the taxpayer is abnormally low.” If these requirements are met, the petitioner’s burden then is to proceed to establish the fair and just amount representing normal earnings for use as a constructive average base period net income. Petitioner has made no attempt to compare its invested capital with the invested capital of other corporations because it feels that its competitors in the manufacture of gasoline hose were so large and devoted to the manufacture of so many products other than gasoline hose that comparison would be fruitless. Petitioner seeks to establish that its invested capital was abnormally low by a ratio showing of the average of its annual average equity invested capital to 100 per cent of its annual average borrowed capital; and by a ratio showing of the capital stock and surplus and the mortgages payable of its predecessor corporation at the end of each of the base period years 1936 through 1939; and by a percentage comparison of the turnover of its capital in sales during its fiscal years 1942 through 1946 with that of its predecessor during the base period years. The authorities upon which petitioner relies for this procedure are: (1) That part of EPC 35 (1949-1 O. B. 134,135, revising part VII (D) of the Bulletin on Section 722), which states: (D) Abnormally Low Invested Capital. Section 722 (c) (3) deals with corporations having abnormally low invested capital. In such cases there must be present some identifiable abnormality in the taxpayer’s business situation which affects the amount of its invested capital. It is sufficient if the abnormality is established by analysis of the circumstances affecting the taxpayer’s own invested capital, although comparisons with other corporations' may be used. For example, the fact that invested capital is abnormally low might be established by showing an abnormally high ratio of borrowed capital to total invested capital * * * .and (2) Regulations 112, section 35.722-4 (c), providing as follows: (c) The invested capital of the taxpayer is abnormally low. If the type of business done by the taxpayer is not one in which invested capital is small but the invested capital of the taxpayer is unusually low because of peculiar conditions existing in its case, the excess profits credit based on invested capital will be considered an inadequate standard for determining excess profits. Thus, suppose that a corporation commenced business in 1941 with a leased plant valued at $1,000,000, but with equity invested capital and borrowed capital of only $40,000. If the invested capital of such company is unusually low relative to the size of its operations, its excess profits credit based on invested capital might be an inadequate standard for determining excess profits, and the taxpayer would be subject to an unreasonable tax burden if required to compute its excess profits tax under the invested capital method. Under EPC 35, the problems of the norms of the ratio of borrowed capital to total invested capital, or possibly the norms of the turnover of capital in sales, are merely substituted for the problem of ascertaining when invested capital is abnormally low. As to what these norms might be, the. record is silent, except for the suggestion that the history of the New York predecessor supplies them. But that alone can hardly be indicative of what is normal. There have been no adjudications which bear directly upon the present case. Cases dealing with “thin capitalization” as a factor in determining whether payments by corporation to stockholders were dividends or interest have been examined without finding any benefit to the taxpayer. With the case in such a posture as this, i. e., the complete absence of any proof as to what normals might be, it is impossible for us to say that petitioner has met its burden and established that its invested capital was abnormally low in order to come within the provisions of section 722 (c) (3). Such a conclusion makes it unnecessary for us to resolve the difficult problem raised by respondent of whether in making the comparison of borrowed capital to total invested capital we are required to compare the full 100 per cent of average borrowed capital or the statutory 50 per cent thereof. Cf. Springfield Plywood Corporation, 18 T. C. 17, which approves the conclusion of the Bulletin on Section 722, page 131, that the term “invested capital,” as used in section 722 (c) (3), means the statutory invested capital, which includes both equity invested capital and only 50 per cent of borrowed invested capital. Acceptance of respondent’s position would, of course, greatly increase the percentages of petitioner’s equity invested capital. Petitioner’s $300,000 debenture obligation, which was a factor in computing its invested capital, was $100,000 in excess of the fair market value of all the assets. Consequently, petitioner’s contention that it had income-producing assets which it could not include in its invested capital, if such could be a consideration in view of our basic conclusion, lacks conviction. Nor are we called upon to adjudicate the other issues presented, which are dependent on the initial premise. Reviewed by the Special Division. Decisions will be entered under Rule 50.