SPRINGFIELD TABLET MANUFACTURING CO., PETITIONER, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 31514.    Filed April 12, 1954.

*J. Weston Miller, Esq.*, and *Perry A. Ennis, Esq.*, for the petitioner.
*Ray H. Garrison, Esq.*, for the respondent.

38

OPINION.

ARUNDELL, *Judge:* Respondent has recognized petitioner's qualification for relief under section 722 (b) (4), by reason of its commitment prior to January 1, 1940, to a course of action constituting a change in the character of its business, and has made a partial allowance of petitioner's claims. In such partial allowance the respondent used a constructive average base period net income of $41,300 for the taxable years 1942 to 1946, inclusive, whereas petitioner contends that it is entitled to a constructive average base period net income of $64,860.30. Its actual average base period net income was $33,441.75.

Our only question then is to determine what is the correct constructive average base period net income of this petitioner.

Respondent takes the position that prior to January 1, 1940, petitioner was committed to the acquisition of only 3 envelope manufacturing machines and that any reconstruction of base period net income should be based on the output of those machines only. He states in his brief:

Respondent admits petitioner changed the character of its business within the meaning of section 722 (b) (4) by reason of an increase in the capacity for

production as the result of a course of action to which petitioner was committed prior to January 1, 1940. The commitment consisted of a board of directors' resolution of October 3, 1939 which authorized the purchase and installation of three machines for the manufacture of certain types of envelopes previously handled by petitioner, as jobber. Pursuant to the resolution, the three machines were installed prior to the close of petitioner's base period on October 31, 1940. There was no further authorization or commitment for additional machines prior to January 1, 1940.

The statutory provision pertaining to so-called commitment cases as found in section 722 (b) (4) is:

If the business of the taxpayer did not reach, by the end of the base period, the earning level which it would have reached if the taxpayer had commenced business or made the change in the character of the business two years before it did so, it shall be deemed to have commenced the business or made the change at such earlier time. * * * Any change in the capacity for production or operation of the business consummated during any taxable year ending after December 31, 1939, as a result of a course of action to which the taxpayer was committed prior to January 1, 1940 * * * shall be deemed to be a change on December 31, 1939, in the character of the business, * * *

The course of action to which petitioner was committed, as shown by the resolution of October 3, 1939, and other evidence of record, was the establishment of a new division of its business devoted to the manufacture of envelopes and writing paper. The course of action encompassed not the purchase of just 3 machines but "such additions to its factory and equipment as would enable it to enter the field of manufacturing envelopes and correspondence paper." Although the directors' resolution specifically authorized the immediate purchase of 3 machines, which were said to be "the most practical machines to be purchased at first," it further stated that "it was understood that additional equipment was to be purchased when needed." In other words, the undertaking was not to be limited to these 3 first machines.

As to what may be accepted as a commitment under section 722 (b) (4), the respondent's regulations, Treasury Regulations 112, section 35.722-3 (d) (5), p. 146, provide that:

Such a commitment may be proved by a contract for the construction, purchase, or other acquisition of facilities resulting in such change, by the expenditure of money in the commencement of the desired change, by the institution of legal action looking toward such change, or by any other change in position unequivocally establishing the intent to make the change and commitment to a course of action leading to such change.

Undeniably, there was an "expenditure of money in the commencement of the desired change" as well as a "change in position unequivocally establishing the intent to make the change" prior to January 1, 1940.

The requirements for a commitment within the intendment of the statute were considered at length in *Studio Theatre Inc.*, 18 T. C. 548, where we said:

The record as a whole shows in our opinion that petitioner made "changes in position unequivocally establishing the intent to make the changes [in capacity for production or operation]," and that is enough to establish the "commitment" required by the statute. S. Rept. No. 1631, 77th Cong., 2d Sess., p. 202; see also Treas. Regs. 112, sec. 35.722–3 (d).

Here, the evidence is equally convincing that at the time of the resolution of October 3, 1939, petitioner had a well formulated intention and plan to enter the envelope and writing paper manufacturing field on substantially the scale reached, and with substantially the equipment on hand, at the end of 1941.

The respondent is in error, we think, in attempting to limit petitioner's constructive base period net income to the potential of the 3 first acquired machines. Petitioner's commitment was sufficient to cover, at least, the 5 machines listed above.

As set out in our findings, if petitioner had had the benefit of the 2 years' experience provided by the statute, its sales from its envelope and writing paper department would have amounted to 20 per cent of its total sales at the end of the base period. This finding is amply supported by the evidence.

Respondent's counsel objects strenuously to any consideration of post-1939 operations in the reconstruction of base period earnings because of the alleged statutory limitation of such usage found in section 722 (a).[1] However, respondent recognizes that in section 722 (b) (4) commitment cases the specific exceptions to that prohibition permit the consideration of post-base period operations to the extent necessary to determine the change in the character of the taxpayer's business. It seems to us that may include consideration of post-base period operations for the purpose of establishing the normal approximate ratio of petitioner's envelope and writing paper business to its total business, without any regard to petitioner's actual earnings in any post-base period year. The Commissioner's own regulations seem to accept that construction of the statute, for they provide in Treasury Regulations 112, section 35.722–3 (d) (5), that:

To the extent necessary to determine the nature of the change in the capacity for production or operation, and the extent to which such change has been reflected in the taxpayer's business, regard may be had to facts existing after December 31, 1939. Although no regard should be had to actual earnings after December 31, 1939, as indicative of the amount of normal earnings attributable to the change, ratios existing between such earnings and earnings from other

[1] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

(a) GENERAL RULE.—* * * In determining such constructive average base period net income, no regard shall be had to events or conditions affecting the taxpayer, the industry of which it is a member, or taxpayers generally occurring or existing after December 31, 1939, except that, in cases described in the last sentence of section 722 (b) (4) and in section 722 (c), regard shall be had to the change in the character of the business under section 722 (b) (4) or the nature of the taxpayer and the character of its business under section 722 (c) to the extent necessary to establish the normal earnings to be used as the constructive average base period net income.

operations of the taxpayer or of similar taxpayers or an industry of which the taxpayer is a member may be taken into account.

In regard to the cases cited by respondent in his brief,[2] it is enough to say that none of them establishes any rule that post-1939 operations may not be considered in a 722 (b) (4) commitment case for the purpose of establishing the ratio of earnings resulting from the change in operation to those attributable to other operations. The *Radio Shack Corporation* case was not a commitment case. In *Southern California Edison Co.*, 19 T. C. 935, 986, we held that there was no statutory basis, in determining constructive average base period net income, for the taxpayer's proposal for a projection, as of the end of the base period, of the additional earnings that it might reasonably expect in subsequent years as a result of the change to which it was committed. We said:

The very nature of a commitment case involves changes consummated after the base period, and of necessity one would have to consider such post-1939 events in order to make the statute effective. We need not decide here what additional post-1939 events, if any, may be taken into account, but it is clear that those post-1939 events that may be considered must be used only to the extent that they are necessary to determine "normal earnings to be used as the constructive average *base period* net income." [Italics supplied.]

There is some evidence that there was a larger demand for envelopes in proportion to school supplies in some or all of the post-base period years than there was in the base period years but we do not think it was sufficient to require any adjustment in the ratio established. The fact is that there was a wartime increased demand for all of the products manufactured by petitioner, school supplies as well as envelopes, after the base period.

Respondent further contends that petitioner now makes claims and relies upon facts not presented in its original claims for relief, in violation of the rule of *Blum Folding Paper Box Co.*, 4 T. C. 795. What respondent objects to particularly is petitioner's use, in its proposed reconstruction, of the post-1939 factor of the proportion of envelope sales to total sales.

The rule of the *Blum* case excludes new issues and new facts relating to qualification for relief. We said in that case "This means that the applications must set forth not only the grounds for relief, but also a statement of the facts which the Commissioner is to consider in support of the reasons given." In *Trunz, Inc.*, 15 T. C. 99, we said:

However, it seems appropriate at this time to mention that *Blum Folding Paper Box Company*, 4 T. C. 795, is not authority for some of the principles for which the Commissioner cites it. It was held in that case that this Court will not

---

[2] *Radio Shack Corporation,* 19 T. C. 756; *Southern California Edison Co.,* 19 T. C. 935; *Hemenway-Johnson Furniture Co.,* 19 T. C. 782; *Wisconsin Farmer Co.,* 14 T. C. 1021, 1031.

consider *facts* which were not set forth in the application or applications for relief. The Court did not hold that evidence to support facts stated in the applications would have to be the same as that presented to the Commissioner or that the taxpayer would have to set forth in its application the evidence upon which it relied to establish facts stated therein, and *it did not say anything about methods of computing constructive average base period net income or restrict the taxpayer as to theories relating to that question.* [Italics supplied.]

The cases cited on this point by respondent, *Wadley Co.*, 17 T. C. 269, and *Block One Thirty-Nine, Inc.*, 17 T. C. 1364, both dealt with qualifying issues sought to be raised before the Tax Court for the first time. In proposing the use of the post-1939 ratio of envelope sales to total sales for the purpose of reconstructing base period earnings, petitioner is not raising any new qualifying issue or offering any facts in support thereof which were not before the respondent when petitioner's claims were under consideration.

The figures as to petitioner's base period and post-base period sales of manufactured products and of jobbed products, and the earnings from such sales, have all been stipulated. We are satisfied from the evidence that, with an experience of 2 years in putting the envelope and writing paper manufacturing department in operation on the scale to which it was committed, petitioner's sales of those commodities would have reached a normal level at the end of the base period of at least 20 per cent of its total sales. Using that ratio to determine the envelope and writing paper sales for all of the base period years, and taking into consideration the effect that the changed conditions would have had on operating expenses, as well as making such other adjustments as the evidence seems to require, we have determined that $47,500 is a fair and just amount representing petitioner's constructive average base period net income. The petitioner has made no objection to the respondent's adjustment under the variable credit rule for the fiscal year ended October 31, 1941, and effect will be given thereto under the Rule 50 computation.

Reviewed by the Special Division.

*Decision will be entered under Rule 50.*