MORGAN CONSTRUCTION COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 26982.    Filed November 17, 1954.

*Thomas R. Wickersham, Esq.*, for the petitioner.
*George J. LeBlanc, Esq.*, for the respondent.

246

OPINION.

Arundell, *Judge:* The evidence, in our opinion, shows that the invention, development, and sale of the Morgoil bearings constituted a change in the character of petitioner's business within the meaning of section 722 (b) (4). The respondent while contending that the manufacture and sale of Morgoil bearings did not constitute a change within the meaning of the section puts his chief argument on his contention that the change that took place was not "during or immediately prior to the base period" within the meaning of section 722 (b) (4).

The evidence before us establishes that, while the smaller bearings were being produced in considerable quantities and were well known to the rolling mill industry by 1935, the larger bearings from which the profits were chiefly made found no market until 1935, and the actual development period for these bearings extended until near the end of 1939, the last year of petitioner's base period. For instance, the thrust bearing defects, one of the most serious experienced by the petitioner, did not develop until late in the base period and were not corrected until near the close of 1939. This was the last change made in the basic design of the bearings up to the present time.

Throughout the base period, the petitioner was required to make large expenditures for research and experimentation in an effort to correct defects in the bearings. Also, it found it necessary to work out new methods of manufacturing the bearings, and it was necessary to install a large amount of new machinery to meet production requirements. As a result, petitioner's net profits on its base period sales of bearings were abnormally low. Thus, it seems to us that under the statute, as construed by the Commissioner's regulations,[1] the change in the character of the business must be considered as having taken place "during or immediately prior to the base period."

In its reconstruction of base period income, the petitioner proposes to increase 1939 sales of Morgoil bearings from $816,576.04, actual, to

---

[1] Regulations 112.

Sec. 35.722–3. Determination of Excessive and Discriminatory Tax; Taxpayer Entitled to Excess Profits Credit Based on Income.—

(*d*) *Commencement or change in character of business.*—* * *

No arbitrary temporal limitations can be provided to circumscribe the concept of "immediately prior to the base period" for the purposes of section 722 (b) (4) in the case of a business commenced or changed in character at such time. * * * Generally, business experiences a time lag between the time that new operations are commenced, reflecting either the starting of a new business or of a business essentially different in character from an old business, and the attainment of a normal earning level. If all or a portion of this time lag occurs during the base period, the earnings during such period cannot be said to represent normal average earnings.

Generally, the commencement of business or the change in character of a business will be deemed to have occurred immediately prior to the base period if under normal conditions the normal earning level of a business so commenced or changed would not be realized until some time during the base period and would be principally and directly related to such commencement or change. * * *

a minimum of $1,140,501.39, and to correspondingly increase gross profits from $186,090.12, actual, to a minimum of $377,505.93.

Petitioner would also increase gross profits by applying to 1939 constructive sales the increased ratio of gross profits to sales established in 1941, the theory being that with 2 years' additional experience from 1939 the defects and abnormal production costs would have been eliminated and a higher normal ratio of gross profits to sales established.

In our opinion, the evidence fails to establish what additional sales of Morgoil bearings, if any, petitioner would have had in 1939, or in any year of the base period, if the change in its business had taken place 2 years earlier than it did. Petitioner could only sell the bearings when and as the rolling mill industry was ready to purchase them. That depended to a large extent on the progress of the industry itself, and particularly the increase in demand for the products of the large roll, high-speed mills. The peak demand for the small type bearings apparently was reached in 1936 when 704 of them were sold. Only 8 were sold in 1939 as against 21 of the larger type. There is no convincing evidence that the industry would have been ready to absorb any appreciably greater number of the larger bearings during the base period even if the defects had been earlier corrected.

The manufacturing costs of the bearings were abnormally high during the base period years due to the large expenditures required for research, experimentation, development of manufacturing technique, and for correcting operational defects in bearings already installed. With 2 years' additional experience, most of the defects would have been eliminated and the production costs materially decreased by the end of the base period. Petitioner's records show that there was a substantial reduction in manufacturing costs in 1941 over the base period average.

While there are no available records for a mathematically accurate computation of the amount of the additional net income that would have resulted from such earlier change, there is evidence before us on which a reasonable estimate can be made. Giving effect to the numerous factors for which adjustments must be made in the reconstruction of petitioner's base period income, we have concluded and have found as a fact that with such earlier change, petitioner's average base period net income would have been increased by $35,000.

One other issue calls for disposition.

The respondent contends that the facts presently relied on by the petitioner in respect of the development of the Morgoil bearings and the figures essential to any reconstruction of base period income attributable thereto cannot be considered by this Court because they

were not submitted to him with or in support of the claims for relief. *Blum Folding Paper Box Co.*, 4 T. C. 795. We disagree with the respondent's interpretation of the claims submitted by the petitioner. We think that those claims, as originally submitted, clearly identify the principal factors upon which the petitioner was requesting relief and that among these were the invention and development of the Morgoil bearing as a ground for relief under subsection (b) (4). The respondent fully considered and rejected the claims as presented.

It may be conceded that the theory advanced in our reconstruction and the figures we have used pertaining to the excessive production costs of the Morgoil bearings were not furnished to the Commissioner during his administrative consideration of the claims for relief, but we do not think this is fatal under our holding in the *Blum* case. As we said in *Trunz, Inc.*, 15 T. C. 99, the *Blum* case "did not hold that evidence to support facts stated in the applications would have to be the same as that presented to the Commissioner or that the taxpayer would have to set forth in its application the evidence upon which it relied to establish facts stated therein, and it did not say anything about methods of computing constructive average base period net income or restrict the taxpayer as to theories relating to that question."

Reviewed by the Special Division.

*Decision will be entered under Rule 50.*