AVILDSEN TOOLS AND MACHINES, INC., PETITIONER, *v.* COMMISSIONER
OF INTERNAL REVENUE, RESPONDENT.

Docket No. 33947.    Filed September 21, 1956.

*Arthur S. Freeman, Esq., L. J. Schwartz, Esq., Allan Grossman,
Esq.,* and *William J. Friedman, Esq.,* for the petitioners.
*Harold Weinstock, Esq.,* for the respondent.

1130

OPINION.

FISHER, *Judge:* The petitioner seeks excess profits tax relief under section 722 (c), Internal Revenue Code of 1939. Not having come into existence until after 1939, it is not entitled to use excess profits credit based on income under section 713. It contends that its excess profits credit, based on invested capital, computed under section 714, is an inadequate standard of normal earnings because its business is of a class in which intangible assets, not includible in invested capital under section 718, made important contributions to income (sec. 722 (c) (1)) and its invested capital was abnormally low (sec. 722 (c) (3)).[2]

A corporation is said to come within the "class" referred to in section 722 (c) (1) above "if the nature of the taxpayer's business function, the character of its organization, or the methods it employs in operation are such that intangible assets of the character in question make important contributions to income, * * *." (Bulletin on Section 722, as amended by E. P. C. 35.)

The petitioner lists as among the intangible assets not includible in invested capital (1) the goodwill or going concern value of the business which it acquired from the proprietorship; (2) the secret processes or the unique method of manufacturing twist drills on its 5-spindle fluting machines, acquired from the proprietorship, and the exclusive right to use, manufacture, and sell such machines; (3) the employment contracts with its key personnel; (4) the customers' lists; (5) the production plan embodying technique and machinery for the employment of female labor; and (6) the certificates of

---

[2] SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

(c) INVESTED CAPITAL CORPORATIONS, ETC.—The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer, not entitled to use the excess profits credit based on income pursuant to section 713, if the excess profits credit based on invested capital is an inadequate standard for determining excess profits, because—

(1) the business of the taxpayer is of a class in which intangible asets not includible in invested capital under section 718 make important contributions to income,

* * * * * * *

(3) the invested capital of the taxpayer is abnormally low. * * *

priority which Avildsen transferred to the petitioner at the time of its organization.

Respondent concedes on brief that at the time petitioner took over the business from the proprietorship, the business had already achieved full development. We think it is clear from the evidence that the business had a substantial going concern value when it was taken over by petitioner, particularly when interrelated with the availability of the continued services of Avildsen and his selected key personnel. We think that the strongest contributing factor to petitioner's success was Avildsen himself. His experience in the twist drill manufacturing business, his knowledge of the industry generally, his organization ability, his comprehensive knowledge of the problems of the particular business, and his contacts with outlet sources were vital factors in petitioner's bid for a footing in the industry. He was the organizer, dominant personality, and sparkplug of the petitioner. Under the principles announced in *Danco Co.*, 14 T. C. 276, 283–285 (1950), Avildsen's important contributions to the business through his own attributes and qualifications were in themselves sufficient to qualify petitioner under section 722 (c) (1). See also *Jackson-Raymond Co.*, 23 T. C. 826 (1955).

In other words the outstanding capacity of Avildsen himself (not to mention capability of the key men who were brought into the company under pre-existing employment contracts) were intangible assets not included in invested capital which clearly made important contributions to income. Correlating this with the taking over of a ready-made business with going concern value merely gives further emphasis to the significance of these intangible assets as an integrated whole.

In the light of the conclusions indicated above, there is no occasion for us to consider whether or not the remaining factors listed by petitioner are intangible assets or whether they made important contributions to income.

Likewise, since we hold that petitioner is qualified under section 722 (c) (1) it is not necessary for us to consider whether it also qualifies under 722 (c) (3).

Respondent, relying upon *Blum Folding Paper Box Co.*, 4 T. C. 795 (1945), urges on brief that we are barred from considering the limited issue of goodwill or going concern value on the theory that the issue was not administratively presented. While the precise words "goodwill" or "going concern value" were not used, our examination of the statement made a part of the application for relief for the year ending June 30, 1942 (and incorporated by reference in the applications for the other years before us), satisfies us that respondent was sufficiently apprised of the basis of petitioner's claim and the facts on which it relied in relation to this issue. See *Trunz, Inc.*, 15 T. C.

99, 105 (1950); *Morgan Construction Co.*, 23 T. C. 242, 254 (1954). Moreover, as indicated above, we hold that petitioner has qualified for relief under the principles of *Danco Co., supra*, so that assuming, *arguendo*, that respondent's position may have possible merit on a segregated issue involving only goodwill or going concern value, our ultimate determination would not be affected thereby.

Respondent makes the further contention that petitioner is a "war-baby" and therefore cannot qualify for relief.

We think it is quite apparent upon the record that petitioner's business was essentially a peacetime activity, devoted to the war effort, however, as were many peacetime industries, because of the exigencies of the war period. We find nothing in the law or the decisions interpreting it which warrant our denying relief on this ground. The effect of rearmament and European war conditions in the latter part of 1939 upon any reconstruction of earnings presents, of course, an entirely different question.

Petitioner asserts, and respondent denies, that the excess profits credit based on invested capital is an inadequate standard for determining excess profits for each of the fiscal years in issue. It is our view that such a standard is inadequate for the fiscal year ending June 30, 1942, but is adequate for the remaining years in issue. The respective invested capital credits for the years before us are set forth in our findings. Our views will be apparent from our reconstruction.

The record contains elaborate statistical data, including various ratios and comparatives, and there is much in the way of opinion evidence. The briefs present theories which the parties would have us apply to their respective views of the facts. We think it apparent that the respondent's approach to reconstruction (which would deny all relief) is much too low, while petitioner's proposed reconstruction of $264,372 is much too high. There is, however, sufficient information in the record to enable us to apply our own judgment, although we must recognize that in this, as in many section 722 cases, we cannot hope to be precise because of the many imponderables to be considered.

We, of course, have given thought to the reconstruction of sales and profits for the year 1939 under base period conditions and to backcasting techniques to be applied in order to reach average constructive earnings for the entire base period. The data and opinion evidence submitted has been helpful in reaching our ultimate conclusions, but no single factor has been determinative. We have, in our reconstruction, given the weight we deemed appropriate to respondent's contention that regard be given to the enhancement of demand in the latter part of 1939 under the stimulus of rearmament and war in Europe. We have, on the other hand, made no adjustment under the variable credit rule because respondent concedes that the business

had reached the stage of full development at the time petitioner took over the proprietorship.

After weighing all of the factors involved, it is our judgment that $123,000 is a fair and just amount of normal earnings to be used as a constructive average base period net income in determining excess profits for the fiscal year ending June 30, 1942. We would have found a like amount for each of the other years before us, but there is no occasion for us to do so because it is apparent from our discussion that the excess profits credit for those years was not an inadequate standard.

Reviewed by the Special Division.

*Decision will be entered under Rule 50*