GODFREY FOOD COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 31882. Promulgated September 24, 1952.

*John B. Myers, Esq.,* and *Willis H. Brown, C. P. A.,* for the petitioner.

*R. E. Maiden, Jr., Esq.,* and *R. B. Sullivan, Esq.,* for the respondent.

1084

OPINION.

LeMire, *Judge:* The petitioner contests the Commissioner's disallowance of its claims for excess profits tax relief under section 722 (a) and (b) (4), quoted in material part below.[1]

The undisputed facts show, and the Commissioner concedes, that petitioner both commenced business and changed the character of its business during the base period within the meaning of section 722 (b) (4), the section under which petitioner has based its claims for relief. Petitioner began operating its first store, the Long Beach store, on November 1, 1938, and opened its second store, the Huntington Park store, on May 20, 1939. Its statutory base period is the 4-year period September 1, 1937, through August 31, 1940. Those two factors, the commencing of business and the change in the character of the business, that is, a change in the "capacity for production or operation of the business," are the only factors relied upon by the petitioner in its claims for relief and in its petition herein.

The irregularities attributed to the petitioner's former president, Coonan, and his forced separation from the business are referred to in the claims for relief as a "retarding factor of considerable weight in the early history of the company."

The losses attributable to Coonan's mismanagement and thefts cannot be considered here as qualifying factors because they were not

---

[1] Internal Revenue Code:

SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

(a) GENERAL RULE.—In any case in which the taxpayer establishes that the tax computed under this subchapter (without the benefit of this section) results in an excessive and discriminatory tax and establishes what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon a comparison of normal earnings and earnings during an excess profits tax period, the tax shall be determined by using such constructive average base period net income in lieu of the average base period net income otherwise determined under this subchapter. * * *

(b)·TAXPAYERS USING AVERAGE EARNINGS METHOD.—The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because—

* * * * * * *

(4) the taxpayer, either during or immediately prior to the base period, commenced business or changed the character of the business and the average base period net income does not reflect the normal operation for the entire base period of the business. If the business of the taxpayer did not reach, by the end of the base period, the earning level which it would have reached if the taxpayer had commenced business or made the change in the character of the business two years before it did so, it shall be deemed to have commenced the business or made the change at such earlier time. For the purposes of this subparagraph, the term "change in the character of the business" includes * * * a difference in the capacity for production or operation * * *. Any change in the capacity for production or operation of the business consummated during any taxable year ending after December 31, 1939, as a result of a course of action to which the taxpayer was committed prior to January 1, 1940, * * * shall be deemed to be a change on December 31, 1939, in the character of the business * * *.

relied upon in petitioner's claims for relief and the facts pertaining thereto were not presented to the Commissioner. See *Blum Folding Paper Box Co.*, 4 T. C. 795; *Monarch Cap Screw & Manufacturing Co.*, 5 T. C. 1220; and *Wadley Co.*, 17 T. C. 269.

The Commissioner's position here is that petitioner has failed to show that it is entitled to an excess profits credit based on reconstructed base period net income in excess of the credits which he has allowed under the invested capital method.

To be entitled to any relief under section 722 (b) (4) petitioner must convert its actual operating losses for the base period years 1939 and 1940, in the amounts of $7,813.15 and $3,261.28, respectively, into constructive earnings sufficient to produce excess profits credits in excess of the credits allowed by the Commissioner under the invested capital method of $2,174.06, $2,018.21, and $2,344.85, for the respective taxable years 1943, 1944, and 1945. See *Green Spring Dairy, Inc.*, 18 T. C. 217, and cases there cited.

Petitioner has proposed three different reconstructions of base period income. In its claims for relief it reconstructed an average base period net income of $4,468.01. In its proposed findings of fact petitioner requests the following findings:

19. That the reconstructed net profit for Store #2 for the fiscal year ended August 31, 1940 is the sum of $2,891.51 computed as follows:

| | |
|---|---:|
| Sales | $180,344.84 |
| Cost of sales | 154,703.38 |
| Gross profit | 25,641.46 |
| Other income | 4,405.92 |
| Total income | 30,047.38 |
| Less expenses | 27,155.87 |
| Net profit | $2,891.51 |

20. That the normal earning capacity of the petitioner for the only complete and normal earning base period is the earnings of Store #2 for the fiscal year ended August 31, 1940 in the sum of $2,891.51.

In this reconstruction of base period net income petitioner takes the actual sales of the Huntington Park store for 1940 amounting to $180,345, but reduces the cost of goods sold by the amount of the inventory loss of $1,460.54 attributable to the Huntington Park store. Taking the reconstructed 1940 net profit of the second store of $2,891.51 and applying the indices of Business Activity prepared by the Security First National Bank of Los Angeles, as contained in the stipulation of facts, petitioner arrives at a constructive average base period net income of $2,697 and a constructive average base period credit for each of the taxable years of $2,962.15.

In its brief petitioner proposes a reconstructive average base period net income of $3,016 and an excess profits credit of $2,962.15. As a starting point, petitioner takes 14½ per cent of the gross sales of the Huntington Park store for the fiscal year ended August 31, 1940, amounting to $3,226, as representing the normal expected earnings of that store, and applying the indices of Business Activity compiled by the Security First National Bank of Los Angeles, under the so called push-back rule, determines reconstructive earnings for the base period years 1937, 1938, 1939, and 1940, of $2,980, $2,887, $2,970, and $3,226, respectively.

On the evidence before us we cannot make any finding as to what extent, if any, petitioner's earning level at the close of its base period would have been increased had it commenced operations or opened its Huntington Park store two years earlier than it did. No contention is made and no proof has been offered to show that this second store, and petitioner's business as a whole, had not attained its normal growth, in terms of sales volume, by the end of the base period.

Petitioner's reconstruction as set out in its proposed findings relates only to the operations of the Huntington Park store. Any proper reconstruction of normal operations for the base period must necessarily embrace all of petitioner's business. The Long Beach store was not closed out until 1941 after the close of the base period, and there is no evidence that its closing was a result of or, in point of time, was in any way related to the opening of the Huntington Park store.

The unsoundness of petitioner's reconstruction of base period income as set out in its brief lies in the use of the arbitrary percentage of sales formula as a starting point in computing normal base period earnings. While it is found as a fact that the uniform purchasing and pricing system under which petitioner operated was "designed" to yield a profit of 14½ per cent or 15 per cent of gross sales, it has not been found, nor does the evidence support such a finding, that that was normal in the experience of other retail grocers similarly situated or would have been normal for the petitioner, after adjustment for all proven base period abnormalities.

The reconstruction of base period income must be related to the taxpayer's individual business experience. The intention of Congress to avoid setting up any theoretical standard of normal base period earnings for any industry or class of taxpayers is clearly manifest throughout the excess profits tax relief provisions of the statute. We rejected the taxpayer's computation of average base period net income on the basis of such a formula in *Danco Co.*, 14 T. C. 276, where we said:

The petitioner states that its constructive average base period net income should be computed on the basis of the general formula which was commonly

used by Artisan and other companies from 1936 to 1939 to fix the sales price of custom work. Thus, the petitioner contends that 20 per cent of its net sales in 1942 and 1943 fairly represents a constructive average base period net income to be used in computing its excess profits credit for each year. It makes no effort to establish what its own sales, gross profits, administrative costs, or net income could reasonably have been expected to be during the base period years. In our opinion, a fair and just amount representing petitioner's normal earnings can not be established under the method proposed.

The inherent fallacies in the petitioner's contentions are obvious. It is abundantly clear that by "constructive average base period net income" section 722 (a) contemplates that a taxpayer's normal earnings over the base period years will be expressed as a fixed amount and not as a percentage to be applied to sales from year to year as proposed by the petitioner. * * *

Although section 35.722–4 (c) of Regulations 112 recognizes the fact that no exact criteria can be prescribed for the computation of the constructive average base period net income of a taxpayer under section 722 (c), we feel that the taxpayer seeking relief must be prepared to submit the facts from which this Court may reasonably determine with some degree of accuracy the probable amount of its normal earnings for use as a constructive average base period net income.

Even after adjustment of petitioner's actual base period income for the losses attributable to Coonan's mismanagement and thefts and making such other adjustments as the evidence warrants petitioner would not be entitled to as large excess profits credits as have been allowed by the Commissioner. On the evidence, we must therefore sustain the Commissioner's disallowance of petitioner's claims for relief.

Reviewed by the Special Division.

*Decision will be entered for the respondent.*