OPINION. Oppice, Judge: Petitioner contends that its base period net earnings were depressed because of a drought which prevailed throughout Nebraska and adjoining areas during the base period. The evidence leaves no doubt, and a finding to that effect has been made, that because of the drought and the resulting decline in farm income, petitioner’s business was depressed, along with most other types of business in the drought area, and that as a result petitioner’s average base period net income is an inadequate standard of normal earnings. See sec. 35.722-3 (a) of Regs. 112.[1] The drought is a qualifying factor under section 722 (b) (2) of the Internal Revenue Code. S. N. Wolbach Sons. Inc., 22 T. C. 152. And petitioner is entitled for each of the years to an excess profits credit based on income if that should result in a lesser tax. Sec. 712, I. R. C. To be entitled to relief, however, the petitioner must show to what extent its earnings were depressed and provide some reasonably accurate means of reconstructing its base period earnings. Moreover, petitioner must show that it is entitled to a constructive average base period net income which will result in a larger excess profits credit, based on income, than that allowed by the respondent under the invested capital method. Godfrey Food Co., 18 T. C. 1083. It will be noted that petitioner’s excess profits credit under the invested capital method, which petitioner used in its returns, amounted t'o approximately $3,700 in each of the taxable years 1942 and 1943. Its average base period income was approximately $1,200. Petitioner contends that it is entitled to a constructive average base period net income of not less than $7,334.59, as set out in its rejected claims for refund. In reconstructing its base period income, petitioner offers several alternative computations, all of which are designed to adjust gross sales, and net profits, for the drought factor. In all of these computations petitioner uses indices based on statistical series purporting to reflect the base period depression in cash farm income or combined farm values in the State of Nebraska, attributable to the drought. In some instances the Statewide series are converted to petitioner’s more limited trade areas. For the purpose of comparison in establishing the extent of the base period depression petitioner uses either the 1924-1930 or the 1926-1935 periods. It selects the period 1924-1930 as the most normal period prior to 1939. For reconstructing net sales, petitioner uses two methods, described as the “net profit ratio” and the “reconstructed expenses” methods. In the application of the net profits ratio method it assumes that 10 per cent is a normal and reasonable rate of net profits on sales. With the reconstructed expenses method each expense item is considered separately and adjusted, if necessary, to reflect the increased sales. The constructive average base period net income determined under the several computations ranges from $8,207.27 to $10,781.19, as against petitioner’s actual average base period net earnings of $1,193.37. The respondent objects to petitioner’s reconstruction of both base period gross sales and net profits. He contends that the evidence fails to establish any significant correlation between the drought and petitioner’s earnings. Except for the last paragraph containing our ultimate finding, we have made findings of fact which are virtually identical with the proposed,findings communicated to the parties in the report of the commissioner who heard the evidence. Petitioner took exception in only three respects to the findings so suggested. Of the three exceptions noted, one, a typographical error in the excess profits taxes paid, has been corrected in the present findings. The two others relating to the census figures for the city of Lincoln and the date of the dissolution of the petitioner-corporation have been found as meticulously as the evidence permits. On the latter point, however, slightly more ambiguous statements have been employed to reflect the actual condition of the record. The acceptance of these evidentiary facts, however, by no means establishes petitioner’s case. We think that petitioner has overestimated the effect of the drought on its base period sales, as well as the ratio of net profits to sales. While, quite possibly, petitioner’s business felt the effect of the curtailment of farm income it was not wholly dependent upon farm income. There were other industries and other sources of income, particularly in the city of Lincoln, less sensitive to the drought. The evidence is that about one-half or more of petitioner’s customers were residents of Lincoln and its environs. Petitioner had a long history of low net profits. Its net earnings did not exceed $2,400 in any year from 1922 to 1935, inclusive. It had an average net loss of approximately $1,000 over that period. It had much larger losses in the “depression years” 1930 and 1931. One of the internal factors affecting petitioner’s net profits was the salary drawn by Sartor, its principal officer and sole owner. For instance, in 1923, one of petitioner’s loss years, his salary was $9,500 while during the base period profit years it was only $5,000. The actual results of the drought on petitioner’s business are perhaps more accurately reflected in petitioner’s gross sales than in its net profits. The gross sales varied from a high of approximately $85,000 in 1922 to a low of $35,600 in 1932. The average for the period 1922-1935 was approximately $61,200, and for the period 1922-1939 approximately $59,000. For the base period the average was approximately $52,000. To increase the average base period gross sales to $90,000 or even to $70,000, as petitioner proposes, would far overstep any point of normalcy established by the petitioner over the long period of its operations. Any proper reconstruction of petitioner’s base period earings, however sound in theory, must be compatible with its own experience. Godfrey Food Co., supra. Correcting for the drought factor in the base period years could not change petitioner’s long-established pattern of operations. Even with an adjustment of petitioner’s gross sales to the highest point justified by the evidence, and a computation of net profits in any manner compatible with its actual experience, the reconstructed average base period net income would not result in an excess profits credit as great as that allowed to petitioner under the invested capital method. That credit, as stated above, amounted to $3,700 in each of the taxab] e years 1942 and 1943. We cannot find that under normal conditions petitioner would have had profits which would have resulted in a greater excess profits credit. We conclude, therefore, that there was no error in respondent’s disallowance of petitioner’s claim for relief under section 722. Green Spring Dairy, Inc., 18 T. C. 217. Reviewed by the Special Division. Decision will be entered for the respondent. Regs. 112. Sec. 35.722-3. Determination op Excessive and Discriminatory Tax; Taxpayer Entitled to Excess Propits Credit Based on Income.— • »****• (a) Interruption or diminution of normal production, output, or operation in the "base period. — If the taxpayer establishes that in one or more taxable years in its base period normal production, output, or operation was interrupted or diminished because of the occurrence either immediately prior to, or during the base period, of events unusual and peculiar in the experience of the taxpayer, the average base period net income shall be considered to he an inadequate standard of normal earnings. * * * Normal production, output, or operation means the level of production, ouput, or operation which would have been reached by the business of the taxpayer had the unusual and peculiar events not occurred. [[Image here]]