FRANKS MANUFACTURING CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 35969. Filed December 12, 1956.

*Donald P. Moyers, Esq.*, and *John H. Conway, Esq.*, for the petitioner.

*Allen T. Akin, Esq.*, for the respondent.

508

516

OPINION.

WITHEY, *Judge:* Petitioner's claims for relief are based on section 722 (b) (4), Internal Revenue Code of 1939. It contends that there was a change in the character of its business during the base period

years when it began the manufacture and sale of portable rotary drilling rigs and telescoping derricks.

Respondent has recognized that petitioner is entitled to have its excess profits tax computed on a constructive average base period net income of $8,700, which produces a credit slightly in excess of that computed under the invested capital method for 1941 but less than that for the other taxable years. Respondent stated in his notice of deficiency and partial allowances of petitioner's claims, dated May 10, 1951, as follows:

> After careful consideration of your applications for relief under section 722 of the Internal Revenue Code filed April 2, 1943 for the taxable years ended December 31, 1940 and December 31, 1941, June 7, 1943 for the taxable year ended December 31, 1942, May 18, 1944 for the taxable year ended December 31, 1943, and June 25, 1946, for the taxable years ended December 31, 1944 and December 31, 1945, it has been determined that, except with respect to the taxable year ended December 31, 1941, you have not established your right to the relief requested. The relief requested for the taxable year ended December 31, 1941, has been allowed in part.
>
> \*      \*      \*      \*      \*      \*      \*
>
> It has been determined that your invested capital credit as computed under section 714 of the Internal Revenue Code is an inadequate standard for determining excess profits tax for the taxable year ended December 31, 1941 but not for the taxable year ended December 31, 1940 and the taxable years ended December 31, 1942 to December 31, 1945, inclusive. Although a constructive average base period net income of $8,700.00 would be allowable for the taxable years ended December 31, 1942 to December 31, 1945, inclusive, the amount would not result in tax benefits greater than those obtained under the provisions of section 714 of the Internal Revenue Code. It has been concluded that you were entitled to a constructive average base period net income of $8,700.00 for the taxable year ended December 31, 1941. However, in accordance with your request, an excess profits credit of $7,965.10 an amount determined under the provisions of section 714 of the Internal Revenue Code, was used in computing your excess profits tax liability for the taxable year ended December 31, 1941 as set forth in this statement.

In the opening statements of counsel at the trial of the case, petitioner's counsel asked Government counsel "for the sake of the record, do you view the case as though we were dealing with the reconstruction problem only?", and Government counsel replied, "Yes, primarily." The record does not show on what specific grounds respondent determined that petitioner was entitled to the use of a constructive average base period net income of $8,700 in computing its excess profits credit.

In his brief, respondent points out that in the statutory notice to petitioner he has admitted a "qualifying change," but argues that petitioner has failed to demonstrate that it is entitled to a constructive average base period net income in excess of that which has been allowed.

On these facts, and the further facts found above regarding petitioner's base period operations, we hold that petitioner changed the character of its business during the base period when it began the manufacture and sale of integrated, portable drilling rigs and telescoping derricks and is, therefore, entitled to have its excess profits credit for each of the taxable years computed on a fair and just amount representing normal earnings under the changed conditions.

We do not think that there was any change in the character of petitioner's business resulting from petitioner's entering into foreign trade. The large Russian order, which petitioner obtained early in 1940, according to petitioner's own statement, was in pursuance of a change in its sales policy; but all the record shows petitioner would have accepted foreign orders at any time.

As a reconstruction problem, our question is: What would have been petitioner's average base period earnings if it had commenced the manufacture and sale of rotary drilling rigs and telescoping derricks 2 years earlier than it did?

To gain any relief, petitioner must establish a constructive average base period net income that would result in excess profits credit, computed under the income credit method, in excess of the credit which has been allowed under the invested capital method. *Green Spring Dairy, Inc.*, 18 T. C. 217; *Godfrey Food Co.*, 18 T. C. 1083.

Petitioner first began the manufacture and sale of portable rotary drilling units for production purposes in 1937. These were small units to be used for drilling slim holes to a depth of not more than 4,000 feet. They were made to specifications of the purchasers and were mounted on trucks. Petitioner received orders for 4 such rigs in 1937 from 3 different large oil producers at prices from approximately $9,000 to $20,000. Three of these units were sold in 1937 for a total sales price of $40,597.51; 6 in 1938 for $169,761.58; and 4 in 1939 for $116,054.36. By the end of 1939 petitioner had developed a large portable unit capable of drilling to a depth of 6,000 feet. It had eliminated many of the defects in the early models which had developed with actual field use and had standardized most of the parts of the different models.

Also, in 1939, petitioner had developed and put on the market a telescoping derrick for use in servicing producing wells. This type of derrick had several important advantages over the telescoping mast servicing units which petitioner had previously produced.

In our opinion, the evidence of record supports petitioner's contention that it would have reached a higher earning level by the end of 1939 if it had begun the manufacture and sale of the complete portable drilling rigs and telescoping derricks 2 years earlier than it did. This would have given petitioner more needed time to work out the defects

which developed in actual field use of the new equipment and to promote its acceptance by the oil producers. The evidence convinces us that with 2 years' additional experience petitioner would not only have sold more units of each type but would also have been able to reduce the per unit cost, after elimination of the development expenses.

The extent to which these earlier changes would have improved petitioner's base period earnings is necessarily a matter of speculation. In its proposed reconstruction petitioner estimates that with the earlier changes it would have been able to sell in 1939 at least 30 of the portable rotary drilling units and 12 telescoping derrick units. The sales prices and production costs per unit are geared to petitioner's actual 1939 experience, adjusted for various business period indices and price fluctuations. The sales of products other than portable drilling rigs, such as well servicing units, spudders, and core drills, are not reconstructed, but spare parts and service sales are increased to 20 per cent of the reconstructed unit sales of drills and derricks, which is somewhat less than petitioner's base period experience. The final result of petitioner's reconstruction is a constructive average base period net income of $248,853.68 for 1940, and $298,710.52 for the years 1941 to 1945, inclusive.

The estimates of the number of units that petitioner could have sold in 1939 with the changes having been made 2 years earlier than they were is supported by the testimony of several of petitioner's witnesses. Although we do not question the sincerity and impartiality of these witnesses, we nevertheless are unable to accept their estimates as a basis for a reconstruction of petitioner's base period earnings. There were adverse factors affecting petitioner's business in 1939, such as depressed economic conditions and restricted oil production, which may have been obscured by the passing of time. We think that the views of these witnesses reflect too much of the optimism born of later more prosperous years.

But even if petitioner had been able to obtain orders for as many portable rotary drilling units and telescoping derricks in 1939 as claimed, there is no showing that it had the plant capacity to produce them. Petitioner represented to the Commissioner in its claim for relief under section 721, in connection with its Russian order for drilling rigs, that it was required to double its plant capacity in order to produce the 40 units contracted for early in 1940. Obviously, without a large expansion of its plant petitioner would not have had the capacity to produce 30 rotary drilling rigs and 12 telescoping derricks in 1939. And if petitioner had expanded its plant in the base period to handle the larger volume of business, production costs would likely have been much greater and net profits per unit smaller.

The evidence as a whole, we think, falls far short of supporting petitioner's constructive average base period net income figure of $248,853.68 for 1940 and $298,710.52 for the other excess profits tax years, as against petitioner's actual average base period net loss of over $5,000. On the other hand, we think that the constructive average base period net income of $8,700, which the respondent has determined, is entirely inadequate to place petitioner's base period operations under the changed conditions on a normal basis. There is nothing in the record to show how respondent arrived at that amount or even what factors he took into account in making his determination.

From our careful study of the evidence and our best appraisal of the arguments offered by the parties in their briefs, we have concluded that a fair and just amount representing normal earnings to be used as a constructive average base period net income is $30,000. This amount should be properly adjusted for income tax as to the year 1940.

Reviewed by the Special Division.

*Decision will be entered under Rule 50.*