NUTRENA MILLS, INC. (KANSAS) (SUCCESSOR TO NUTRENA MILLS, INC., OF MISSOURI, DISSOLVED), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

NUTRENA MILLS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 29838, 29839.   Filed September 21, 1956.

*Elmer B. Hodges, Esq.,* and *Florence Middlekamp, Esq.,* for the petitioner.

*David Karsted, Esq.,* for the respondent.

1102

1104

OPINION.

Arundell, *Judge:* Petitioner's claims for relief are based primarily upon the ground that it had several changes in the character of its business both during and immediately prior to the base period years 1936 to 1939, inclusive, and that because of these changes its average base period net income did not reflect the normal operation for the entire base period of the business. It contends that its business did not reach, by the end of the base period, the earning level which it would have reached if it had made these changes 2 years before it did so, and that under subsection (b) (4) of section 722[1] of the Internal Revenue Code of 1939, it shall be deemed to have made the changes at such earlier time. In its applications for relief and in the petitions before this Court, petitioner claimed a constructive average base period net income of over $451,000. In its brief, however, petitioner reduced this amount to about $265,000. In our findings we have found $166,035.55 for 1941; $166,379.48 for 1942 and 1944; and $156,035.55 for 1940, for carryover purposes. The reason for the substantially lesser amount for 1940 is due to the application of the so-called variable credit rule, which rule has been approved and applied by this Court in a number of cases. See *Nielsen Lithographing Co.,* 19 T. C. 605, 614; *Radio Shack Corporation,* 19 T. C. 756, 762; *Yeast Products, Inc.,* 21 T. C. 308, 330; *Lily Mills Co.,* 21 T. C. 900, 911; and *Springfield Tablet Manufacturing Co.,* 22 T. C. 35, 43.

We hold that the opening of the new plant and the three company-owned and -operated warehouses during or immediately prior to the

---

[1] Sec. 722 (a). General Rule.—In any case in which the taxpayer establishes that the tax computed under this subchapter (without the benefit of this section) results in an excessive and discriminatory tax and establishes what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon a comparison of normal earnings and earnings during an excess profits tax period, the tax shall be determined by using such constructive average base period net income in lieu of the average base period net income otherwise determined under this subchapter. * * *

(b) Taxpayers Using Average Earnings Method.—The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because—

* * * * * * *

(4) the taxpayer, either during or immediately prior to the base period * * * changed the character of the business and the average base period net income does not reflect the normal operation for the entire base period of the business. If the business of the taxpayer did not reach, by the end of the base period, the earning level which it would have reached if the taxpayer had * * * made the change in the character of the business two years before it did so, it shall be deemed to have * * * made the change at such earlier time. For the purposes of this subparagraph, the term "change in the character of the business" includes a change in the operation or management of the business, a difference in the products or services furnished, a difference in the capacity for production or operation * * *

base period constituted a "change in the character" of petitioner's business. Respondent does not seriously contend that petitioner does not qualify for consideration for relief. His main contention against allowing petitioner any relief under section 722 is that petitioner has not established that its average base period net income is an inadequate standard of normal earnings because of these changes. The parties have stipulated and we have so found that petitioner's average base period net income for 1940 and 1941 is $146,035.55, which is also its arithmetic average for the base period for years beginning prior to January 1, 1942; and that for 1942 and 1944 it is $161,898.72, which, due to the benefit of section 742 (b) (2), is $15,519.24 in excess of its arithmetic average for the base period of $146,379.48 for years beginning after December 31, 1941.

We think petitioner has established that if the changes in character had been made 2 years earlier it would have had at the end of the base period an earning level considerably in excess of its actual level. At Coffeyville it was constantly selling more feeds with a high margin of profit and less feeds with a low margin of profit. This means that if petitioner had opened the Coffeyville plant 2 years sooner and had had 2 years additional experience, its constructive net income for the base period would have been higher than its actual net income for that period. At St. Joseph the ratio of tonnage sales to Kansas City's tonnage sales increased considerably after the establishment of the company-owned and -operated warehouse in that city. In any reconstruction of net income for the base period, we think this improvement should be reflected throughout the base period. By December 31, 1939, the operations at Oklahoma City and Omaha were just beginning to function. These company-owned and -operated warehouses were in effect regarded by petitioner as additional plants except that petitioner did all of its manufacturing at the Kansas City and Coffeyville plants. We think that it may reasonably be assumed that if these two warehouses that were opened in 1939 had been opened 2 years earlier, they would have been as successful as the one at St. Joseph and that some additional income should be reconstructed accordingly.

We have found as an ultimate fact that for the years 1941, 1942, and 1944, petitioner has established a constructive average base period net income of $20,000 in excess of its arithmetic average base period net income for those years instead of $118,892.75 contended for by petitioner. In arriving at this figure, we have given consideration to all of the facts set out in our findings and to the respondent's contention that some adjustment should be made in reconstructing normal earnings for any abnormal benefit petitioner may have derived from the drought situation referred to in our Findings of Fact. Also, in arriving at this figure we have rejected petitioner's contention that certain expenses which appeared on the books at Kansas City should

be allocated to Coffeyville. We do not think the evidence supports petitioner in this regard.

The above-mentioned $20,000, when added to petitioner's arithmetic average base period net income for the years 1941, 1942, and 1944, produces a constructive average base period net income in excess of petitioner's average base period net income for those years in the amounts set out in our findings.

Reviewed by the Special Division.

*Decisions will be entered under Rule 50.*